**SO ORDERED.**

**SIGNED this 26 day of July, 2011.**



_____
**Stephani W. Humrickhouse
United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

| | |
|---|---|
| IN RE: | CASE NO. |
| **HARVEST OAKS DRIVE ASSOCIATES, LLC** | 10-03145-8-SWH |
| DEBTOR | |

### ORDER DENYING RELIEF FROM STAY

The matter before the court is the motion filed by CSMC 2006-C5 Strickland Road, LLC, through its special servicer, LNR Partners, LLC, ("CSMC") for relief from the automatic stay. Hearings were held in Raleigh, North Carolina, on March 24, 2011, May 18, 2011, and June 9, 2011, and post-hearing briefs were filed by both CSMC and the debtor. The court rendered its ruling on June 14, 2011, in which the motion was denied. This order sets out the basis for the court's decision.

### Background

Harvest Oaks Drive Associates, LLC filed a petition for relief under chapter 11 of the Bankruptcy Code on April 21, 2010. The debtor owns a shopping center in Raleigh, North Carolina. CSMC holds a security interest in the shopping center, as well as in the debtor's leases and rent proceeds. CSMC seeks relief from the automatic stay pursuant to § 362(d)(2) to resume foreclosure on the property, contending that the stay should be lifted because the debtor does not have equity in the property, and the property is not necessary to an effective reorganization. For purposes of this

motion only, the debtor has stipulated that as of the time of the hearings, it has no equity in the property.[1] As to whether the property is necessary for an effective reorganization, CSMC asserts that the debtor has no realistic chance of reorganizing within a reasonable time and that the debtor is incapable of confirming any plan over its objection. According to CSMC: 1) despite having had a reasonable time to increase occupancy and income to levels sufficient to confirm a plan, the debtor has not done so, and 2) the debtor cannot treat CSMC as fully secured over its objection. It is CSMC's position that it not only has the right to elect to be treated as fully secured under § 1111(b), but may also elect to have its claim bifurcated into secured and unsecured claims representing the debt balance up to the collateral's value and any deficiency, respectively. Since the debtor may not prevent CSMC from having an unsecured claim, CSMC contends it will control the voting of the impaired classes in any plan (because it is the only secured creditor and is the largest unsecured creditor), and the debtor will not be able to satisfy § 1129(a)(10).

On the other hand, the debtor contends that it has worked to retain existing tenants and has entered into several leases for new tenants, achieving an occupancy rate of 76% in March 2011,

---

[1] The debtor, however, specifically reserved the right to assert that it has equity in the property on the confirmation date. In support of its contention that the property is necessary to a reorganization in prospect, the debtor presented evidence to show that it expects to enter into several additional leases by confirmation that would increase the value of the property to a level at which equity may exist.

which had increased to 85-87% as of the June 9, 2011 hearing. The debtor expects to reach 95% occupancy by the time of the confirmation hearing. Given these new developments, the debtor asserts that the resulting increase in income and property value will allow for a feasible plan that is confirmable with minimal modifications. With regard to CSMC's § 1111(b) argument, the debtor counters that if CSMC has an unsecured claim, such claim may be classified separately from other unsecured creditors, as it is not substantially similar to the general unsecured claims. The debtor further asserts that CSMC may be fully secured by the time of confirmation, based on anticipated additional leases, which would not only support feasibility, but would also eliminate CSMC's purported option to elect bifurcated treatment under § 1111(b), thereby removing the alleged absolute bar to confirmation. According to the debtor, its prospects for a confirmable plan satisfy its burden of proof as to CSMC's motion to lift the stay, whether or not the current classification and treatment of CSMC's claim in one class is proper.

## Discussion

Section 362(d)(2) provides that the court shall grant relief from the automatic stay with respect to property if "(A) the debtor does not have equity in such property; and (B) such property is not necessary to an effective reorganization." 11 U.S.C. § 362(d)(2). The Supreme Court has held that the second requirement necessitates a showing that "the property is essential for an

effective reorganization *that is in prospect*," meaning "that there must be 'a reasonable possibility of a successful reorganization within a reasonable time.'" United Sav. Ass'n v. Timbers of Inwood Forest Assocs., 484 U.S. 365, 376 (1988) (emphasis in original) (citations omitted); In re 3G Properties, LLC, 2010 WL 4630352 (Bankr. E.D.N.C. Nov. 5, 2010). The debtor bears the burden of establishing that the collateral at issue is necessary to an effective reorganization, and the movant has the burden of proving lack of equity in the property. See 11 U.S.C. § 362(g).

Based on the debtor's stipulation that it lacks equity at present, CSMC's burden is satisfied, and the first requirement under § 362(d)(2) is resolved in CSMC's favor. As to the second requirement, whether the property is necessary for an effective reorganization, the court finds that the debtor has demonstrated a reasonable prospect of accomplishing an effective reorganization within a reasonable time. First, the debtor has improved its occupancy rate from approximately 50-58% in April 2010, when the petition was filed, to approximately 85-87% as of the June 9, 2011 hearing according to testimony of the debtor's principal, Max Barbour. Given this upward trend, it appears possible that the occupancy rate may continue to increase between now and the confirmation hearing as expected by the debtor. Business volume appears to be increasing, as one of the debtor's new tenants operates a popular Mediterranean restaurant in a 6,000 square foot space, and another tenant has expanded its space based on increased business. The area in which the

debtor's shopping center is located has undergone substantial change as well, in that a Whole Foods Market has recently opened, attracting a significant amount of shoppers. In addition, the debtor has decreased its labor expenses by eliminating an employee making a salary of $5,000 per month, and the principal has elected to forego his monthly draw of $5,000, at least in the first several months, if not for a longer period of time. Mr. Barbour testified that expenses will be reduced further by conserving energy and operating the shopping center as efficiently as possible. As to expected income, the debtor's cash flow in May included approximately $50,000 in gross rent receipts, and the debtor projects that gross income for July will total approximately $110,000. All of these factors support a finding that an effective reorganization is in prospect, and that the debtor will be able to reorganize within a reasonable time.

Further, the confirmation hearing date in this case is quickly approaching, and will provide a more suitable platform for addressing many of CSMC's concerns if they remain at that time. Although CSMC asserts that the court should consider the plan as filed in determining whether the likelihood of an effective reorganization, the Code permits the debtor to amend its proposed plan "at any time before confirmation," as long as it meets the requirements of §§ 1122 and 1123. 11 U.S.C. § 1127(a). This is consistent with the "reasonable possibility" standard applicable to the present motion under § 362(d)(2), in that the debtor must only show that it *can* propose a plan that

has a reasonable possibility of being confirmed within a reasonable time.  See In re Windwood Heights, Inc., 385 B.R. 832, 838 (Bankr. N.D.W.V. 2008) ("The court is not aware of any requirement, and will not impose one, that the plan filed at the time the stay relief motion is pending is the only benchmark for determining whether or not stay relief is appropriate; rather, all that is required is that an effective reorganization be 'in prospect,' and be attainable within a reasonable period of time." (quoting Timbers, 484 U.S. at 376) (internal citation omitted)).  One key factor to the feasibility of any plan proposed by the debtor will be the value of the property, which, notwithstanding the debtor's concession that it lacks equity at present, is in dispute.  By the time of the confirmation hearing, the property may fully secure CSMC's claim.  If not, the debtor may bifurcate CSMC's claim and present a reasonable basis to separately classify the unsecured portion of the debt from the other unsecured creditors.  Based on these variables, as well as the evidence of the property's steadily increasing income stream, the court finds that the debtor has demonstrated that the property is necessary to an effective reorganization that is in prospect.

     Accordingly, the motion for relief from the automatic stay is **DENIED.**

**SO ORDERED**.

**END OF DOCUMENT**